OPINION OF THE COURT
Acting Chief Judge Simons.
This appeal addresses (1) the factual basis necessary to *446 justify police officers’ pursuit and detention of a fleeing individual, and (2) whether, under the circumstances presented, police officers properly pursued defendant into a nearby grocery store, recovered drugs he had discarded and arrested him for unlawful possession of those drugs.
On April 7, 1989, at about 10:50 p.m., Mount Vernon City Police Officer Radzinsky was patrolling in a high-crime area with his partner in a marked police car when he saw defendant reach up and remove a metal Hide-a-Key box from the steel grate of a store window. Officer Radzinsky was aware that the area was known for its drug activity; he personally had made approximately 50 drug-related arrests in the vicinity. He also knew, from his experience and training, that Hide-a-Key boxes are sometimes used by drug dealers to "stash” drugs.
After observing defendant, the officers stopped and got out of their car. They were dressed in plain clothes, but Officer Radzinsky had Ms identifying badge prominently displayed and defendant knew him to be a police officer because defendant had been present when Officer Radzinsky previously arrested a friend of Ms. At the officers’ approach, defendant turned and ran a few steps into a nearby grocery store. The officers chased defendant into the store, saw Mm pass off the box to codefendant Palmer, and saw Palmer go to the rear of the store and throw the box to the floor. Officer Radzinsky retrieved the box and found it contained 17 vials of what later proved to be crack cocaine.
Defendant contends that the police had no justifiable basis to pursue him into the grocery store, that he abandoned the box as a direct result of illegal police conduct, and that, consequently, the recovered crack should have been suppressed at trial.
The parties have urged two different standards for determining the legality of the police pursuit (compare, People v Leung, 68 NY2d 734, 736; People v Be Bour, 40 NY2d 210, 223 [reasonable suspicion needed to justify seizure or pursuit], with People v Howard, 50 NY2d 583, 596 [suggesting that probable cause is needed to justify seizure or pursuit]). The controlling rule is stated in People v Leung (supra): the police may pursue a fleeing defendant if they have a reasonable suspicion that defendant has committed or is about to commit a crime.
Police-citizen encounters take a variety of forms, ranging *447 from a request for information to an arrest. The greater the level of police interference, the greater the quantum of information necessary to justify it. Thus, we have held that the police need have only some objective credible reason to approach a citizen for information, but they must have probable cause to believe that a crime is or has been committed to support an arrest (see, People v De Bour, 40 NY2d, at 223, supra). There is a broad range of legitimate police activity between these two extremes, however, encounters which involve more than an informational stop and less than an arrest. Included among them are forcible stops and seizures which take place whenever an individual’s freedom of movement is significantly impeded (see, People v Be Bour, 40 NY2d, at 216, supra). Illustrative is police action which restricts an individual’s freedom of movement by pursuing one who, for whatever reason, is fleeing to avoid police contact. Because the resulting infringement on freedom of movement is similar, both forcible stops and pursuits require the same degree of information to justify them.
Forcibly detaining someone, or pursuing them for the purpose of detaining them, results in a lesser interference with freedom than does an arrest. Consequently, we have held that the police may forcibly stop or pursue an individual if they have information which, although not yielding the probable cause necessary to justify an arrest, provides them with a reasonable suspicion that a crime has been, is being, or is about to be committed (see, People v Leung, 68 NY2d 734, 736, supra; People v Be Bour, 40 NY2d 210, 223, supra; cf., People v May, 81 NY2d 725 [decided today]).
The. courts have applied this rule somewhat unevenly, however, because of language found in People v Howard (50 NY2d 583, supra). In Howard, we discussed the two extremes of police-citizen encounters, informational stops and arrests. The discussion of probable cause required for arrest lead some to read the decision as standing for the proposition that probable cause is required to justify police pursuit. The holding of the Court, insofar as relevant to the issue before us, was that flight alone would not justify a stop or pursuit. The Court’s conclusions are stated on page 588:
"While we hold that there was a sufficient basis to permit inquiry, we agree that defendant had the right not to answer, that his running did not, absent any indication that any crime had been or *448 was about to be committed, permit detention; that there was no probable cause for defendant’s arrest”.
The Court did not explicitly concern itself with the requirements for an intermediate level of intrusion (People v Howard, supra, at 592).
Though some have interpreted People v Howard otherwise, the rule is, and was before the Howard decision, that the objective evidence necessary to support a stop and seizure short of an arrest is reasonable suspicion (People v De Bour, supra; People v Leung, supra).
Reasonable suspicion represents that "quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand” (see, People v Cantor, 36 NY2d 106, 112-113). Because the determination that reasonable suspicion existed involves mixed questions of law and fact, we are bound by the findings of the courts below if there is evidence in the record to support them (see, People v Jones, 69 NY2d 853, 855).
In the case before us, there is support in the record for the finding below that the police officers had a reasonable suspicion of criminal activity to justify their pursuit of defendant. There was evidence that defendant was seen standing at night in an area known for an excessive amount of drug activity, he was removing a device known to the officers to be used for hiding drug stashes, and he fled immediately upon observing the approaching police. Defendant had a right to refuse to respond to a police inquiry and his flight when the officers approached could not, in and of itself, create a reasonable suspicion of criminal activity (see, People v May, 81 NY2d 725, supra [decided today]). However, defendant’s flight may be considered in conjunction with other attendant circumstances, namely, the time, the location, and the fact that defendant was seen removing an instrument known to the police to be used in concealing drugs. "When coupled with defendant’s immediate flight upon the officer’s approach, the [removal of the Hide-a-Key box] in this narcotics-prone neighborhood establishes the necessary reasonable suspicion * * * such that pursuit by the officers was justified” (see, People v Leung, 68 NY2d, at 736, supra).
Inasmuch as the pursuit of defendant was justified, his abandonment of the Hide-a-Key box was not precipitated by any illegal police conduct (see, People v Leung, 68 NY2d, at *449 736-737, supra; cf., People v Boodle, 47 NY2d 398, 402, cert denied 444 US 969). Once defendant abandoned the box, he lost his right to object to the opening of the box and the drugs discovered upon opening the box provided the police with probable cause to arrest him. Thus, defendant’s motion to suppress evidence was properly denied.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Kaye, Titone, Hancock, Jr., Bellacosa and Smith concur.
Order affirmed.