■ In the Matter of EMMANUEL O., a Person Alleged to be a Juvenile Delinquent, Appellant. [821 NYS2d 255]—

In a juvenile delinquency proceeding pursuant to Family Court Act article 3, the appeal is from an order of disposition of the Family Court, Kings County (Weinstein, J.), dated July 14, 2004, which, upon a fact-finding order of the same court dated February 26, 2004, finding that the appellant committed acts which, if committed by an adult, would have constituted the crimes of criminal possession of a weapon in the third degree and criminal possession of a controlled substance in the seventh degree, and after a dispositional hearing, adjudged him to be a juvenile delinquent and placed him on probation for a period of two years. The appeal brings up for review the denial, after a hearing, of that branch of the appellant's omnibus motion which was to suppress physical evidence.

Ordered that the order of disposition is reversed, on the law, without costs or disbursements, the fact-finding order is vacated, that branch of the appellant's omnibus motion which was to suppress physical evidence is granted, the petition is denied, and the proceeding is dismissed.

The evidence adduced at the suppression hearing revealed that on December 21, 2003, at approximately 1:40 A.M., Police Officer Santiago Frances and his partner, while in plain clothes, approached the appellant and his two friends in the vestibule of a residential building located at 340 Miller Avenue in Brooklyn. Officer Frances' reasons for approaching the youths were that the building was located in a high crime area and that he had received information, from an unnamed source, that a "party" was being held at that location. As the officers were approaching, the appellant and his friends were engaged in conversation and did not appear to be doing anything illegal. Before identifying himself as a police officer, Frances asked the youths whether they lived in the building, to which one of the appellant's friends replied "no," and explained, upon further inquiry, that they were waiting for a friend. During this time, the appellant said nothing. Officer Frances then asked the youths for identification. At that point, the appellant opened the inner door of the building and ran inside. Frances immediately gave chase, yelling, "Police, stop, police, stop." During the pursuit, the appellant allegedly dropped what turned out to be a loaded and oper-

able firearm. Upon the appellant's subsequent arrest, crack cocaine was recovered on his person.

Because police pursuit of an individual significantly impedes the person's freedom of movement, it must be justified by a reasonable suspicion that a crime has been, is being, or is about to be committed (*see People v Holmes,* 81 NY2d 1056, 1057-1058 [1993]; *People v Martinez,* 80 NY2d 444, 447 [1992]). Assuming, without deciding, that the police officers here had an objective, credible reason to initiate an encounter with the appellant and his friends (*cf. People v McIntosh,* 96 NY2d 521 [2001]; *People v Terracciano,* 135 AD2d 849 [1987]), the appellant's subsequent actions of opening the inner door of the vestibule and running inside the building were insufficient, under the circumstances of this case, to give rise to a reasonable suspicion that he was engaged in criminal activity (*see People v Brogdon,* 8 AD3d 290 [2004]; *see also People v Holmes, supra; People v Howard,* 50 NY2d 583 [1980], *cert denied* 449 US 1023 [1980]; *compare People v Pines,* 99 NY2d 525 [2002]; *Matter of Steven McC.,* 304 AD2d 68 [2003]). Therefore, Officer Frances had no lawful basis to pursue the appellant and command him to stop, and the evidence recovered as a result of the unlawful pursuit should have been suppressed. Crane, J.P., Ritter and Fisher, JJ., concur.

Rivera, J.(dissenting and voting to affirm the order of disposition with the following memorandum in which Dillon, J., concurs). The issue presented in this case is whether the Family Court properly denied that branch of the appellant's motion which was to suppress physical evidence. In my opinion, the Family Court's determination was proper. Thus, I would affirm the order of disposition.

At the suppression hearing, Police Officer Frances testified that, on December 21, 2003 at approximately 1:40 A.M., he and two other officers were in the vicinity of the subject public housing development located in Brooklyn. This was a "high crime area" that had been designated a "target zone" within the precinct because of numerous shootings and narcotics sales that had taken place there in the past. Frances received information that a "party" was being held at this location.

Frances observed the appellant and two others standing in a semi-circle formation inside the vestibule area of one of the buildings in the housing development. He observed that the outer door of the building had been propped open. Frances then observed the appellant state something to the two other individuals. At this point, the appellant proceeded to move closer to the inner door while the two others started to walk toward Frances, stopping shoulder-to-shoulder in front of the doorway.

These individuals were "blocking" Frances' access to the appellant. Frances stated that he watched the appellant very carefully because the appellant "stood back as the other two approached" him.

Frances asked the group whether they lived in the building. One of the males told Frances that the group did not live in the building, but that they were waiting for a friend. Frances then asked them for identification. At this point, the appellant started to open the inner door of the building and fled inside the building. Frances pursued the appellant. During the pursuit, Frances observed a gun fall off the appellant's person. Thereafter, a search of the appellant revealed six ziplock bags containing crack cocaine.

The Family Court credited Frances' testimony and denied that branch of the appellant's motion which was to suppress physical evidence.

"[M]uch weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses" (*People v Prochilo,* 41 NY2d 759, 761 [1977]). I find no basis to disturb the Family Court's credibility determination (*see People v Wilson,* 5 AD3d 408 [2004]).

The initial police encounter with the appellant was lawful in its inception (*see People v Hollman,* 79 NY2d 181 [1992]; *People v De Bour,* 40 NY2d 210; *People v Shervington,* 25 AD3d 628, 628-629 [2006]; *People v Black,* 239 AD2d 593, 594 [1997]).

Further, the appellant's flight and the surrounding circumstances provided the police with reasonable suspicion to justify pursuing him (*see People v Woods,* 98 NY2d 627, 628 [2002]; *People v Martinez,* 80 NY2d 444, 447-448 [1992]; *People v Wilson, supra* at 409). Specifically, the incident occurred in the early morning hours. The subject building was located in a high crime area. The appellant did not live in the building. The appellant and the two others were in the vestibule of the building, which was not normally open to the general public. Significantly, upon speaking to the two males who accompanied him, the appellant walked away from Frances or moved closer to the inner door while the two males walked toward Frances, and stood shoulder-to-shoulder, thereby blocking Frances' access to the appellant. These facts were sufficient to establish the necessary reasonable suspicion to justify the police conduct.