People v Serrano (2024 NY Slip Op 03833)

People v Serrano

2024 NY Slip Op 03833

Decided on July 17, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 17, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
WILLIAM G. FORD
JANICE A. TAYLOR
LAURENCE L. LOVE, JJ.

2023-01795
 (Ind. No. 70164/21)

[*1]The People of the State of New York, respondent,
v
Max R. Serrano, appellant.

Laurette D. Mulry, Riverhead, NY (Felice B. Milani of counsel), for appellant.
Raymond A. Tierney, District Attorney, Riverhead, NY (Dina Cangero and Rosalind Gray of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Steven A. Pilewski, J.), rendered February 7, 2023, convicting him of criminal impersonation in the second degree, driving while ability impaired by alcohol, and aggravated unlicensed operation of a motor vehicle in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress his statements to law enforcement officials and evidence of his refusal to submit to a chemical breath test.
ORDERED that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress his statements to law enforcement officials and evidence of his refusal to submit to a chemical breath test are granted, the indictment is dismissed, and the matter is remitted to the County Court, Suffolk County, for further proceedings consistent with CPL 160.50.
According to the evidence adduced at a suppression hearing, on August 29, 2021, at approximately 1:22 a.m., the defendant, who was driving westbound on Montauk Highway, flashed his vehicle's high beams multiple times at a marked patrol car occupied by Officer Spilotros and Officer Pavinski, which was driving ahead of the defendant's vehicle. Upon witnessing the flashing high beams, the officers believed that the defendant was trying to flag them down for help and pulled the patrol car onto the shoulder of the road. The defendant did not pull over but continued driving past the patrol car. Confused, the officers followed behind the defendant's vehicle for a few feet and then activated the patrol car's turret lights to pull over the vehicle "to see if the motorist was in distress for some reason."
After the defendant pulled over onto the shoulder of the highway, Pavinski asked him why he had flashed his lights and if everything was okay. The People did not call Pavinski to testify at the suppression hearing, and Spilotros did not hear the defendant's response. According to Spilotros, the defendant did not appear to be in distress. Pavinski then asked the defendant for his name and birth date. The defendant supplied a birth date that was approximately 20 years earlier than his actual birth date, and Spilotros noticed that the defendant looked much younger than the age he claimed to be. The defendant was then asked to step out of the vehicle. After the defendant exited the vehicle, the officers noticed that the defendant appeared to be intoxicated. After a field [*2]sobriety test, the defendant was placed under arrest for driving while intoxicated.
The defendant was thereafter convicted, upon a jury verdict, of criminal impersonation in the second degree, driving while ability impaired by alcohol, and aggravated unlicensed operation of a motor vehicle in the second degree. On appeal, he challenges the denial of those branches of his omnibus motion which were to suppress his statements to law enforcement officials and evidence of his refusal to submit to a chemical breath test.
"Where a defendant moves to suppress evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Aguilera, 158 AD3d 638, 638 [internal quotation marks omitted]).
The stop of an automobile by police constitutes a "seizure" for purposes of the Fourth Amendment of the United States Constitution (see People v Rodriguez, 41 NY3d 1, 8; People v Spencer, 84 NY2d 749, 752). Generally, stopping an automobile is permitted under the Fourth Amendment where the police have probable cause to believe that a traffic infraction has occurred; when the police have a reasonable suspicion that the driver has committed, is committing, or is about to commit a crime; or "when conducted pursuant to nonarbitrary, nondiscriminatory, uniform highway traffic procedures" (People v Hinshaw, 35 NY3d 427, 430 [internal quotation marks omitted]; see People v Rodriguez, 41 NY3d at 8). Such a stop cannot be "arbitrary, based on whim, curiosity or caprice or with an intent to harass" (People v Wallace, 122 AD2d 238, 238, citing People v De Bour, 40 NY2d 210; see People v Johnson, 40 NY3d 172, 176).
However, the Constitution "is not a barrier to a police officer seeking to help someone in immediate danger" (People v Doll, 21 NY3d 665, 670 [internal quotation marks omitted]; see People v Molnar, 98 NY2d 328, 331). Deemed the "community caretaking function[ ]" by the United States Supreme Court (Cady v Dombrowski, 413 US 433, 441), this concept recognizes that police do not just fight crime, but "perform varied public service roles, including protecting citizens from harm" (People v Rodriguez, 77 AD3d 280, 292 [internal quotation marks omitted]; see Cady v Dombrowski, 413 US at 441; People v Molnar, 98 NY2d at 333; People v De Bour, 40 NY2d at 218). The police's community caretaking function is "'totally divorced from the detection, investigation, or acquisition of evidence' of criminal conduct" (People v Hinshaw, 35 NY3d at 438, quoting Cady v Dombrowski, 413 US at 441).
The Court of Appeals has determined that the police may stop an automobile in an exercise of their community caretaking function if two criteria are met. "First, the officers must point to specific, objective, and articulable facts that would lead a reasonable officer to conclude that an occupant of the vehicle is in need of assistance. Second, the police intrusion must be narrowly tailored to address the perceived need for assistance. Once assistance has been provided and the peril mitigated, or the perceived need for assistance has been dispelled, any further police action must be justified under the Fourth Amendment and Article I, section 12 of the State Constitution" (People v Brown, ____ NY3d ____, 2024 NY Slip Op 02765, *3 [Ct App]). "For an automobile stop, this means that any continuation of the stop beyond what is necessary to ascertain whether an occupant needs aid requires at least reasonable suspicion of criminal activity" (id., ____ NY3d ____, 2024 NY Slip Op 02765, *5).
Here, the first prong of the two-prong test developed in People v Brown has been met, as the officers pointed to the specific, objective, and articulable fact that the defendant repeatedly flashed the subject vehicle's high beams at their marked patrol car, providing them with a reasonable belief that the defendant was in distress. However, the People failed to establish, in the first instance, that the police intrusion in this matter was narrowly tailored to address the perceived need for assistance. Upon permissibly stopping the defendant's vehicle, Pavinski appropriately asked the defendant why he had flashed his lights and whether everything was okay. However, there is no evidence as to the defendant's response to this inquiry. Without such evidence, and in light of Spilotros's testimony that the defendant did not appear to be in distress, the People have not demonstrated that the continued questioning of the defendant was an intrusion "commensurate with [any] perceived need for assistance" (id., ____ NY3d ____, 2024 NY Slip Op 02765, *5 [internal quotation marks omitted]). Furthermore, there is nothing in the record indicating that the officers [*3]had suspicions that the defendant was intoxicated until after they determined that he had lied about his birth date and asked him to exit the vehicle. Accordingly, since the People did not meet their burden of proving the legality of the police conduct, any statements the defendant made to law enforcement officials after Pavinski's initial inquiry, as well as the defendant's refusal to submit to a chemical breath test, must be suppressed.
Accordingly, we reverse the judgment and grant those branches of the defendant's omnibus motion which were to suppress his statements to law enforcement officials and evidence of his refusal to submit to a chemical breath test (see People v Noble, 154 AD3d 883, 885). Without that evidence, there could not be sufficient evidence to prove the defendant's guilt, and, therefore, the indictment must be dismissed (see People v Graham, 134 AD3d 1047, 1048).
In light of our determination, we need not reach the defendant's remaining contentions.
IANNACCI, J.P., FORD, TAYLOR and LOVE, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court